Case 2:25-cr-00099   Document 49   Filed on 10/27/25 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
October 27, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| V. | § CRIM. ACTION NO. 2:25-CR-00099 |
| | § |
| NICHOLAS JACKSON | § |

## ORDER

Law enforcement officers converged on Defendant Nicholas Jackson's residence to execute an arrest warrant for Defendant and a search warrant for the residence. While executing the warrants, an officer asked Defendant for the passcode to a phone discovered in the bedroom of the residence. Defendant provided the passcode, and a search of the phone uncovered child pornography. Defendant now moves to suppress the evidence discovered on the phone, arguing that the officers' failure to provide him *Miranda*[1] warnings before requesting the passcode violated his Fifth Amendment privilege against self-incrimination. (D.E. 35). Because Defendant's statement of the passcode was voluntary, the Court **DENIES** the motion. (D.E. 35).

### I. Facts

On the morning of September 19, 2024, law enforcement officers surveilled Defendant's residence.[2] They had with them warrants to search his home and to arrest him for possession of child pornography. After observing Defendant's girlfriend leave the house and return after dropping off their child, officers approached the home to execute the warrants. They knocked on the door, announced their presence, and stated they had come to execute the warrants. Defendant

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[2] The Court held two suppression hearings in this matter. September 29, 2025 Minute Entry; October 16, 2025 Minute Entry. The facts are drawn from the testimony of Corpus Christi Police Officer Alicia Escobar and Homeland Security Investigations Agent Dustin Wiatrek, as well as body-cam footage which depicted certain portions of the events.

1 / 6

came to the door in his underwear, having apparently just woken up. Officers instructed Defendant to come out of the house and placed him under arrest.

After clearing the house, a group of roughly five officers escorted Defendant back into his residence so that he could clothe himself before being escorted to the station for questioning. Among the agents who accompanied Defendant back into the house was Homeland Security Investigations Agent Dustin Wiatrek.

After Defendant had put on clothing, and while he was being escorted back out of the house, Agent Wiatrek testified that another law enforcement officer asked Defendant for the passcode to a phone that was discovered beside the adult-sized bed in the main bedroom where Defendant had just gotten dressed. Agent Wiatrek testified that the officer asked the question in a "calm tone" and Defendant responded similarly. At the time the officer asked for the passcode, Defendant was clothed and accompanied by roughly five officers. All the officers were armed; none had their weapons drawn. Agent Wiatrek testified that he was unsure whether Defendant had been placed back in handcuffs (which had been removed while he dressed) at the time of the question. Agent Wiatrek also testified he was close enough to hear any exchanges between the other officers and Defendant, and he did not hear any of the officers threaten Defendant in any manner. Further, he testified that there was no aggression involved or physical altercations between any of the officers and Defendant at any point. Agent Wiatrek estimated the entire sequence of bringing Defendant inside to get dressed and then bringing him back outside took only a few minutes.

In response to the officer's single question, Defendant gave the passcode to the phone. At that point, Defendant had not been provided *Miranda* warnings.

After Defendant provided the passcode to the phone, body-cam footage shows him outside his residence leaning against a car. At this point, Defendant is clothed, uncuffed, and smoking a cigarette. The footage does not show any signs of injury to Defendant, nor any other visual evidence that there had been a physical altercation. Corpus Christi Police Officer Alicia Escobar, who remained outside the house while Defendant got dressed, testified that she did not hear any yelling or threats coming from inside the residence while Defendant was inside. She further testified that, following the provision of the passcode, Defendant did not seem upset or otherwise in distress.

Agent Wiatrek testified that the passcode which Defendant provided ultimately allowed law enforcement to access the phone after it arrived at a Homeland Security lab for processing. A subsequent analysis of the phone and its contents revealed over three hundred videos depicting child sexual abuse material. (D.E. 37, p. 2).

## II. Law

The Self-Incrimination Clause of the Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 542 U.S. 630, 637 (2004) (plurality opinion) (collecting cases). In *Miranda v. Arizona*,[3] the Supreme Court "extended the Fifth Amendment privilege against self-incrimination, requiring suppression of statements stemming from custodial interrogation in which the defendant is not apprised of his rights." *United States v. Braithwaite*, 458 F.3d 376, 382 (5th Cir. 2006) (citations omitted).

---

[3] 384 U.S. 436 (1966).

"[T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause." *Patane*, 542 U.S. at 636. Its protections "necessarily sweep beyond the actual protections of the Self-Incrimination Clause" and thus "any further extension of [the rule] must be justified by its necessity for the protection of the actual right against compelled self-incrimination." *Id.* at 639. "Introduction of the nontestimonial fruit of a voluntary statement . . . does not implicate the Self-Incrimination Clause. The admission of such fruit presents no risk that a defendant's coerced statements (however defined) will be used against him at a criminal trial." *Id.* at 643; *see also Braithwaite*, 458 F.3d at 382 n.7 (recognizing *Patane*). Therefore, "the exclusionary rule articulated in cases such as *Wong Sun* does not apply" to "the physical fruit of a voluntary statement." *Patane*, 542 U.S. at 636–37.

A defendant's statement is not per se involuntary merely because he did not receive *Miranda* warnings. *See United States v. Gonzalez-Garcia*, 708 F.3d 682, 688 (5th Cir. 2013). The government bears the burden of proving that an unwarned statement was voluntary. *See United States v. Rojas-Martinez*, 968 F.2d 415, 417–18 (5th Cir.1992) (citing *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986)). "Voluntariness turns on whether a [statement] is obtained through techniques 'so offensive to a civilized system of justice that they must be condemned.'" *United States v. Briseno*, No. 4:23-CR-00004-O, 2023 WL 12039615, at *5 n.44 (N.D. Tex. July 30, 2023) (O'Connor, J.), *aff'd*, No. 23-10797, 2025 WL 619169 (5th Cir. Feb. 26, 2025) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). "Involuntary statements must have resulted from coercive police conduct and include an element of official overreaching." *United States v. Avila*, No. EP-19-CR-3342-PRM, 2020 WL 572874, at *5 (W.D. Tex. Feb. 5, 2020) (Martinez, J.) (citation modified) (first quoting *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004), and then quoting *United States v. Raymer*, 876 F.2d 383, 387 (5th Cir. 1989)).

When a defendant provides a phone passcode "based on his free and rational choice and not because of offensive coercive tactics," the contents of the phone may be used as evidence, notwithstanding a failure to provide *Miranda* warnings before requesting the passcode. *United States v. Guia-Lopez*, No. 22-50234, 2023 WL 5236764, at *7 (5th Cir. Aug. 15, 2023) (per curiam).

### III. Analysis

The Court finds that Defendant voluntarily provided the passcode to the phone.[4] When the officer asked for the passcode, Defendant was clothed and not in any position of duress. The entire sequence of events leading up to the question only lasted a few minutes. Although the officers escorting Defendant were armed, none had their weapons drawn. The officer who asked for the passcode used a calm tone, and no officer spoke any threat to Defendant. After providing the passcode, Defendant appears on the body-cam footage clothed, uncuffed, and smoking a cigarette. Nothing about Defendant's behavior suggests any officer had threatened him, physically assaulted him, psychologically tormented him, or otherwise subjected him to any technique "so offensive to a civilized system of justice that [it] must be condemned." *Briseno*, 2023 WL 12039615, at *5 n.44. To the contrary, the police calmly asked Defendant for the passcode and Defendant responded in kind. After providing the passcode, Defendant leaned against a vehicle and calmly smoked a cigarette—nothing suggests that he was upset or showing any signs of the distress that would be expected to follow the type of techniques that might offend a civilized system of justice. The evidence presented by the Government demonstrates by a preponderance of the evidence that

---

[4] At the first suppression hearing, Defendant presented argument regarding suppression of the statement of the passcode itself, separate and apart from the suppression of the fruits of that statement. However, in his motion, Defendant only argues for suppression of "any evidence obtained from the phone[.]" (D.E. 35, p. 4). Accordingly, the Court does not reach Defendant's argument regarding the statement itself. And, in any event, the Government conceded at both suppression hearings that the statement of the passcode itself should be suppressed.

Defendant provided the passcode based on his free and rational choice. Nothing in the record suggests that Defendant was subjected to any coercion. Accordingly, the Court finds that his statement of the passcode was voluntary, notwithstanding the fact that he had not received *Miranda* warnings.

Because Defendant's statement of the passcode was voluntary, the fruit-of-the-poisonous-tree doctrine does not apply to the physical evidence found on the phone. *Patane*, 542 U.S. at 636–37. Accordingly, the Court will not suppress the evidence recovered from the phone.[5]

### IV. Conclusion

Defendant voluntarily provided officers with the passcode to the phone recovered at his residence. Accordingly, the fruit-of-the-poisonous tree doctrine does not apply, and the Court will not suppress the physical evidence obtained from the phone. The Court **DENIES** Defendant's motion. (D.E. 35).

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
October 27, 2025

---

[5] Defendant's reliance on *United States v. Brown* is misplaced. 125 F.4th 1186 (D.C. Cir. 2025). There, the court suppressed evidence obtained from a cell phone because the opening of the cell phone was facilitated by a biometric passcode obtained in violation of the Fifth Amendment. *Id.* at 1203–05. Critical to that analysis, though, the court found (and the government agreed) "that the police 'compelled' [the defendant] to open the phone." *Id.* at 1202. Here, unlike in *Brown*, the officers did not compel Defendant to provide the passcode to the phone.